## FLOWER v. UNITED STATES

No. 71–1180.  Decided June 12, 1972

PER CURIAM.

Petitioner John Thomas Flower, a regional "Peace Education Secretary" of the American Friends Service Committee and a civilian, was arrested by military police while quietly distributing leaflets on New Braunfels Avenue at a point within the limits of Fort Sam Houston, San Antonio, Texas.  In an ensuing prosecution before the United States District Court for the Western District of Texas on charges of violating 18 U. S. C. § 1382 ("Whoever reenters or is found [within a military post] after having been removed therefrom or ordered not to reenter by any officer or person in command or charge thereof—Shall be fined not more than $500 or imprisoned not more than six months, or both"), it was established that petitioner had previously been barred from the post by order of the deputy commander because of alleged participation in an attempt to distribute "unauthorized" leaflets.  The District Court found that § 1382 "is a valid law" and was validly applied.  It sentenced petitioner to six months in prison.  A divided

panel of the Court of Appeals for the Fifth Circuit affirmed. 452 F. 2d 80 (CA5 1972).

We reverse. Whatever power the authorities may have to restrict general access to a military facility, see *Cafeteria & Restaurant Workers* v. *McElroy*, 367 U. S. 886 (1961), here the fort commander chose not to exclude the public from the street where petitioner was arrested. As Judge Simpson, dissenting, noted below:

> "There is no sentry post or guard at either entrance or anywhere along the route. Traffic flows through the post on this and other streets 24 hours a day. A traffic count conducted on New Braunfels Avenue on January 22, 1968, by the Director of Transportation of the city of San Antonio, shows a daily (24-hour) vehicular count of 15,110 south of Grayson Street (the place where the street enters the post boundary) and 17,740 vehicles daily north of that point. The street is an important traffic artery used freely by buses, taxi cabs and other public transportation facilities as well as by private vehicles, and its sidewalks are used extensively at all hours of the day by civilians as well as by military personnel. Fort Sam Houston was an open post; the street, New Braunfels Avenue, was a completely open street." 452 F. 2d, at 90.

Under such circumstances the military has abandoned any claim that it has special interests in who walks, talks, or distributes leaflets on the avenue. The base commandant can no more order petitioner off this public street because he was distributing leaflets than could the city police order any leafleteer off any public street. Cf. *Lovell* v. *City of Griffin*, 303 U. S. 444 (1938), *Schneider* v. *State*, 308 U. S. 147 (1939). "[S]treets are natural and proper places for the dissemination of information and opinion," 308 U. S., at 163. "[O]ne who is rightfully on a street which the state has left open to the public

carries with him there as elsewhere the constitutional right to express his views in an orderly fashion." *Jamison v. Texas,* 318 U. S. 413, 416 (1943).

The First Amendment protects petitioner from the application of § 1382 under conditions like those of this case. Accordingly, without need to set the matter for further argument, we grant the petition for a writ of certiorari and reverse the conviction.

*Reversed and remanded.*

MR. JUSTICE BLACKMUN dissents, for he would grant the petition for certiorari and hear argument on the merits.

MR. JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE joins, dissenting.

The result, if not the reasoning, of the Court's impressionistic summary reversal of the Court of Appeals in this case is clear: without benefit of briefs or oral argument the Court declares unconstitutional this application of 18 U. S. C. § 1382, a statute enacted to give commanders of military posts authority thought necessary by Congress to exclude civilians from the post area after proper notice.

Because the post commander of Fort Sam Houston may have permitted civilian vehicular and pedestrian traffic on New Braunfels Avenue within the limits of Fort Sam Houston,* the Court holds that he has "aban-

---

*From a record consisting largely of rejected offers of proof, the Court concludes that Fort Sam Houston was an "open" post. It also concludes that New Braunfels Avenue, a traffic artery within the post, was a "completely open" street, presumably more "open" than the post as a whole. While I have difficulty at this stage of the case in knowing how the Court reaches these factual conclusions, or indeed what exactly the varying degrees of "openness" are meant to connote, my disagreement with the Court's summary reversal is not limited to this aspect of the case.

doned" any claim of special interest in who walks, talks, or distributes leaflets on the avenue. Obviously the Court cannot be referring to the subjective intent of the base commander, since he gave petitioner due notice of his debarment from the base, and the bringing of this prosecution evinces a rather strong interest on the part of the commander in petitioner's "leafleting" activities. If the Court means to say that once any portion of a military base is opened up to unregulated vehicular traffic it automatically follows that such portion of the base acquires the status of a public square in a city or town, the mere statement of that proposition—which is all that is contained in the Court's opinion—is not self-demonstrating. Since the Court does not hold, and it does not appear on this record that it could hold, that petitioner Flower was treated differently from any other "leafleteers," the Court's holding does not deal with any possible denial of equal protection. The case thus concerns only the First Amendment claim of leafleteers to go anywhere on a military base to which civilian vehicles and pedestrians are granted free access.

*Adderley* v. *Florida,* 385 U. S. 39 (1966), suggests that civilian authorities may draw reasonable distinctions, based on the purpose for which public buildings and grounds are used, in according the right to exercise First Amendment freedoms in such buildings and on such grounds. Simply because some activities and individuals are allowed on government property does not require the abandonment of otherwise allowable restrictions on its use. Indeed, it is generally recognized that demonstrations on courthouse grounds can be prohibited in order to protect the proper exercise of the judicial function. See *Cox* v. *Louisiana,* 379 U. S. 559, 562 (1965). See also 63 Stat. 617, § 6, 40 U. S. C. § 13k (prohibiting any demonstrations on the grounds surrounding this Court). Similarly, the unique requirements of mili-

tary morale and security may well necessitate control over certain persons and activities on the base, even while normal traffic flow through the area can be tolerated.

The Court's opinion leaves the base commander with a Hobson's choice. He may close access to civilian traffic on New Braunfels Avenue and other traffic arteries traversing the post, thereby rendering the post once more subject to the authority that Congress intended him to have, but also causing substantial inconvenience to civilian residents of Bexar County who presently use these arteries. Or, he may continue to accommodate the convenience of the residents, but only at the cost of surrendering the authority Congress conferred upon him under 18 U. S. C. § 1382 to control access to the post he commands.

An additional problem, to which the Court's opinion devotes no attention whatever, is the question of whether this petitioner should be free to challenge the validity of the post commander's original debarment order in defending a criminal prosecution under 18 U. S. C. § 1382. The Solicitor General, in opposing the petition for a writ of certiorari, contends that petitioner would have been free to challenge the debarment order in a separate proceeding in the United States District Court, relying on *Küskila* v. *Nichols,* 433 F. 2d 745 (CA7 1970), and *Dash* v. *Commanding General,* 429 F. 2d 427 (CA4 1970). The Court, by determining *sub silentio* that exhaustion of such remedies is not required, substantially dilutes the effectiveness of the criminal sanction that Congress deliberately placed behind a post commander's order of debarment. It accomplishes this dilution in a way that may not be at all necessary to the vindication of petitioner's First Amendment rights. By requiring petitioner to proceed in an orderly manner to first litigate any alleged constitutional infirmity in the debarment order, the Court

could assure him a forum for the assertion of such claims while preserving to the post commander the availability of a relatively summary criminal sanction against one who violated a debarment order whose validity has not been contested.

While full argument in this case on the merits might persuade me that the Court's result was required by the Constitution, its present opinion certainly has not done so. I therefore dissent from the summary reversal.