**Benjamin SPOCK et al., Plaintiffs,**

v.

**Bert A. DAVID, Commander, Fort Dix Military Reservation, and Melvin Laird, Secretary of Defense, Defendants.**

Civ. A. No. 1621-72.

United States District Court, D. New Jersey.

Oct. 12, 1972.

Kairys & Rudovsky by David Kairys, Philadelphia, Pa., for plaintiffs.

Herbert J. Stern, U. S. Atty., by Richard W. Hill, Asst. U. S. Atty., for defendants.

## OPINION

CLARKSON S. FISHER, District Judge.

Plaintiffs seek a preliminary injunction ordering defendants from enforcing several Army and Post Regulations which they claim deprives them of their First Amendment rights to make political addresses and to pass out literature in the military confines of Fort Dix.

■ These allegations are sufficient to establish jurisdiction under 28 U.S.C. Sec. 1331. The application will be decided on stipulated facts, affidavits supplied by the parties and testimony and documents received into evidence at the hearing on October 4, 1972.

The plaintiffs' situations fall into two categories. Generally one group of complainants seek to enter the base as political candidates to hold rallies and make political speeches. They are Benjamin Spock and Julius Hobson, Presidential and Vice-Presidential candidates of the Peoples Party and Linda Jenness and Andrew Pulley, candidates for the same offices on the Socialist Workers Party Ticket.

The second category of plaintiffs is composed of members of anti-Viet Nam conflict groups and draft education and conscientious objector organizations who seek relief from being banned from the military installation at Fort Dix. They are John Ginaven, Donald Misch, Alan Hardy and Robert Stanton, who at-

tempted to and still desire to distribute leaflets at the Fort. Although their intended activities are different, it is interesting to note that they ally themselves in this litigation.

Candidates Spock, Hobson, Jenness and Pulley wrote a letter dated September 9, 1972 to General David, Commanding General at Fort Dix, advising him that on September 23, 1972 they intended to enter the Fort to distribute campaign literature and hold a meeting with service personnel. In the letter they agreed to time and place designated by the defendants. On September 18, 1972 General David responded by letter refusing the request giving the following reasons:

1. Fort Dix Regulation No. 210–26, April 9, 1968, prohibiting demonstrations, picketing, political speeches and the like on the base.

2. Fort Dix Regulation No. 210–27 prohibiting distribution of literature not previously approved as to content.

3. Department of the Army Regulations which prohibit military personnel from participating in any partisan political campaign.

4. Interference with the duties of the military personnel.

5. The Commanding General would appear partisan, if he allowed campaigning.

Undaunted, the candidates then informed General David that they intended to walk on the base to campaign on September 23, 1972 at 11:00 A.M. through the entrance to Fort Dix just outside Wrightstown, N.J. When they arrived, they were refused admittance.

The other plaintiffs who had been distributing literature on the Fort at various times (Stanton as long ago as 1968) were apprehended, evicted and given notice that they were barred from the base.

Fort Dix is a military reservation not far from Trenton, N.J. and located in a rural area. It covers fifty-five square miles and has seven main entrance ways. The roads leading into Fort Dix are not

covered by guards or barriers. Apparently, because of the cut-back in personnel and inaccessibility of the military installations, it has not been deemed necessary to establish these precautions.

When the land which the base covers was ceded by the State of New Jersey to the Federal Government the only reservations were easements over four roads for transportation and the right to serve civil process on the reservation. The Provost Marshal maintains five to eight patrols around the clock throughout the post and keeps control over all roads and all areas.

The primary military mission at Fort Dix is training. It is an Infantry Center. At present there are two basic combat training and one advanced individual training brigades encamped. These units train from five days to five and one-half days per week. Other specialty training is also conducted. Over 10,000 personnel were engaged in training activities on September 23, 1972. The vast majority of the geographical area of the Reservation is devoted to training activities.

In addition to trainees, approximately 6,080 people are living on the post in family units and 2600 civilians are employed on the base. There are civilian concessions allowed on the grounds as a service to both the military and the civilian employees.

A 1970 traffic check, which has not been brought up to date, discloses a great volume of both civilian and military vehicular traffic in and out of Fort Dix.

Plaintiffs contend that the right to campaign on the military reservation and to pass out leaflets is protected by the First Amendment as defined in the cases of Flower v. United States, 407 U. S. 197, 92 S.Ct. 1842, 32 L.Ed.2d 653 (1972) and Jenness v. Forbes, 351 F. Supp. 88 (D.R.I.1972).

In *Flower, supra,* the petitioner was distributing leaflets advertising a debate at a local college on New Braunfels Avenue, a street within the limits of Fort Sam Houston, Texas. He had previously been removed from the post and barred therefrom. He was charged with a violation of 18 U.S.C. § 1382, convicted in the District Court and sentenced to six months in prison. The Fifth Circuit Court of Appeals affirmed (one judge dissenting) but the Supreme Court reversed. New Braunfels Avenue was an unguarded arterial highway, freely used by vehicles twenty-four hours a day. Traffic on the road was heavy, being used by buses, taxis and other public transportation as well as private automobiles. Further the sidewalks were used extensively by civilians as well as military personnel. There is nothing in the two opinions which would indicate any control of New Braunfels Avenue by the military. In a short *per curiam* opinion the Supreme Court (three justices dissenting) held:

*"Under such circumstances* the military has abandoned any claim that it has special interests in who walks, talks, or distributes leaflets on the avenue. The base commandant can no more order petitioner off of this public street because he was distributing leaflets than could the city police order any leafleteer off any public street. Cf. Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938), Schneider v. State, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939). '[S]treets are natural and proper places for the dissemination of information and opinion,' 308 U.S. at 163, 60 S.Ct. 146 at 151. '[O]ne who is rightfully on a street which the state has left open to the public carries with him there as elsewhere the constitutional right to express his views in an orderly fashion.' Jamison v. Texas, 318 U.S. 413, 416, 63 S.Ct. 669, 672, 87 L.Ed. 869 (1943).

The First Amendment protects petitioner from the application of § 1382 under conditions like those of this case. Accordingly, without need to set the matter for further argument, we grant the petition for a writ of certiorari and reverse the conviction."

(Emphasis supplied) 407 U.S. at 198–9, 92 S.Ct. at 1843.

In *Jenness, supra,* the District Court in a case like this one at hand and with some of the same plaintiffs as here involved, held that the Commanding Officer at Quonset Point Naval Air Station could properly refuse to permit political activity in the restricted and fenced areas of the base but then decided that the First Amendment required plaintiffs to be permitted to campaign in the nonrestricted family housing area.

 It is settled that a commanding officer of a military or a naval installation can summarily exclude civilians from the area of command. Cafeteria and Restaurant Workers v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). Additionally, there is no violation of First Amendment rights in prohibiting demonstrations on public owned property not designated for general public use. Adderley v. Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966); Cox v. Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965). Further, in a case decided just ten days after *Flower, supra,* Justice Powell speaking for the Court in Lloyd Corp. Ltd. v. Tanner, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972) held that a shopping mall management could prevent anti-war pamphleteering on its property because the Court has never held that a trespasser or an uninvited guest could exercise general rights on private property, significantly adding, " . . . Even where public property is involved, the Court has recognized that it is not necessarily available for speech, pickets or other communicative activities". 407 U.S. at p. 568, 92 S.Ct. at p. 2228.

It is clear that the First Amendment rights of the plaintiffs must be carefully weighed against the interests of the military in prohibiting political activity in the confines of the base and other exercises inimical to the military mission at Fort Dix. The reasoning behind the Regulations here involved is apparent. Aside from urging its personnel to vote, clearly a healthy motive, the military must remain politically antiseptic. This has been the policy of the armed forces throughout the history of the Republic. Further, to allow activity on the military reservation which would interfere with the mission of the Command makes no sense whatsoever.

Plaintiffs' confidence in the holding in *Flower, supra,* is misplaced. That case, as indicated heretofore, dealt with a street on a military reservation which for all intents and purposes had become like any other municipal thoroughfare. It had, in the view of the Supreme Court, been "abandoned" by the military.

 In this case, the Command has not "abandoned" control over any part of Fort Dix. Although civilian vehicles are allowed across some four of its roads, the Military Police has jurisdiction and authority over all criminal offenses and traffic violations throughout the base and as the testimony of the Provost Marshal disclosed, exercises it.

Therefore, in my view, *Flower, supra,* was never intended to apply to the situation in which we are here involved. Jenness v. Frame, *supra,* has been offered to persuade me to plaintiffs' position. There is much agreement between this Court and the opinion of the learned District Court in *Jenness,* but insofar as that court has extended the *Flower* decision, I respectfully decline to follow.

The application by plaintiffs for a preliminary injunction is denied.

Defendants have moved for a severance of the candidates' cases from those of the pamphleteers. In view of the foregoing I need not determine the efficacy of that application at this time.

Submit an order.