Howard **MOSKOWITZ**, Plaintiff,

v.

Joseph F. **CULLMAN**, III, et al., Defendants.

Civ. A. No. 77–492.

United States District Court,
D. New Jersey.

June 1, 1977.

---

Jesse Moskowitz, Jersey City, N. J., and Marilyn Morheuser, Newark, N. J., for plaintiff.

Francis A. Mulhern, Newark, N. J., for defendants.

## OPINION

STERN, District Judge.

Plaintiff, Howard Moskowitz, brought this civil action for a declaratory judgment and injunctive relief against the defendants, the Commissioners of the Port Authority of New York and New Jersey and Leslie Shenkler, the Manager of the PATH Terminal in Journal Square, Jersey City. The complaint asserted that the defendants denied plaintiff the right to pass out handbills and political leaflets in the PATH Terminal concourse in support of his candidacy for the Jersey City Council. The Terminal is a multi-level transportation facility containing bus and train platforms, several concourse levels, information and ticket facilities, and a variety of stores, newsstands, and other public services. Plaintiff sought a temporary restraining order, a declaratory judgment and a permanent injunction barring further interference with what he asserted to be his constitutional right to leaflet in the Terminal. Jurisdiction was asserted under Title 28 U.S.C. § 1343(3), (4), and Title 28 U.S.C. § 2201.

According to the allegations of the verified complaint, filed March 13, 1977, plaintiff was a candidate for the City Council of Jersey City in a municipal election to be held on May 10, 1977. (Complaint, ¶ 4) Plaintiff requested a permit to pass out leaflets concerning his candidacy from the defendants by telephone and in person on March 10 and 11, 1977. He sought to distribute the leaflets in the concourse area of the PATH Terminal in Journal Square, Jersey City. (Id., ¶ 7) Without adverting to any written regulations or guidelines purporting to govern such conduct, the defendants refused to permit plaintiff to pass out his leaflets in the concourse area. (Id., ¶ 8) Plaintiff contended that this refusal violated his First Amendment rights. The complaint further pleaded that plaintiff would be permitted to pass out leaflets at the New York terminal at 41st Street and 8th Avenue in New York. (Id., ¶ 9) Thus, the plaintiff charged that the Authority's refusal to grant him the privilege of leafletting in the Journal Square facility was also a denial of equal protection. (Id., ¶ 10)

In support of his complaint, plaintiff submitted two affidavits. In the first, sworn to by plaintiff on March 14, 1977, he stated that he and the managers of the Terminal were in agreement that handing out leaflets on the bus platforms themselves would pose a safety hazard. (Affidavit of Moskowitz, 3/14/77, ¶ 4) Plaintiff averred that when he then stated that he wished to conduct leafletting in the concourse area of the Terminal, he was told that such activity would be

. . . "a problem." He [Defendant Shenkler] said it would pose a safety hazard for terminal patrons. He said it might be a harassment for people. He said it would cause littering problems. I told him it was not up to him to decide if individuals would feel harassed by being offered a leaflet and that fear of littering could not be an excuse to deny my First Amendment Rights. He said that he had authority to decide what activity could take place on the concourse and that leafletting would not be permitted.

(Id., at ¶ 6) According to the affidavit, a later meeting with officials of the PATH Terminal resulted in verbal authorization for plaintiff to set up two "literature tables", but that it was conveyed to him that no leaflets could be handed out in the indoor concourse area of the Terminal. (Id., at ¶ 8) When plaintiff requested an application for a leafletting permit, defendants said that no such form existed and denied his oral application to leaflet. (Id., ¶ 9)

On this record, the plaintiff sought temporary relief in the form of a temporary restraining order directing the defendants to permit him to leaflet in support of his candidacy in the concourse area of the PATH Terminal at Journal Square. The Port Authority appeared before the Court to contest plaintiff's application. The position of the Port Authority was not made entirely clear at the hearing. At the outset of the hearing, the Authority contended that only "literature tables" would be permitted to plaintiff on the concourse area. Subsequently, however, the Authority ap-

parently conceded that plaintiff could leaflet, but sought to restrict him to certain areas outside the normal flow of heavy commuter traffic. Plaintiff, who stated at the hearing that he is an independent and little-known candidate for office, argued that in order to convey his message it was imperative that he be permitted to enter the traffic flow of commuters to distribute his leaflets.

■ The first question presented by the plaintiff's application for interim relief was the nature of the forum he sought to utilize to communicate his political message. The defendants argued that the concourse platform of the PATH Terminal in Journal Square, Jersey City, is not a "public forum" within the meaning of the case law dealing with the First Amendment. This Court disagreed. The PATH is a subdivision of the Port of New York and New Jersey Authority, see N.J.S.A. 32:1–35.61 *et seq.* (1963), created by agreement between New York and New Jersey; see N.J.S.A. 32:1–1 *et seq.* (1963). Whatever restrictions may flow from the status of property denoted as "private", *compare Lloyd Co. v. Tanner,* 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972) *with Amalgamated Food Employees Union v. Logan Valley Plaza,* 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968), and *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), are here wholly irrelevant. The terminal is a building, constructed, owned, operated and maintained by a public authority. It is open to the public, and it is in fact used by thousands of citizens each day as they travel to and from work. The Court of Appeals for the Second Circuit has held, under identical circumstances, that a New York bus terminus of the same Port Authority is a public forum. *Wolin v. Port of New York Authority,* 392 F.2d 83 (2nd Cir.), *cert. denied,* 393 U.S. 940, 89 S.Ct. 290, 21 L.Ed.2d 275 (1968). Similar results have been reached by other courts with respect to a municipal auditorium, *Southeastern Promotions, Ltd. v. City of West Palm Beach,* 457 F.2d 1016, 1019 (5th Cir. 1972); O'Hare International Airport terminals, *Chicago Area Military Project v. City of Chicago,* 508 F.2d 921 (7th Cir.

1975); and the Oakland Municipal Airport, *Kuszynski v. City of Oakland,* 479 F.2d 1130 (9th Cir. 1973). Because of the public nature of the PATH Terminal, this Court was guided by the words of Mr. Justice Roberts, speaking for the Court in another case in which Journal Square and Jersey City figured:

> Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens. The privilege of a citizen of the United States to use the streets and parks for communication of views on national questions may be regulated in the interest of all; it is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order; but it must not, in the guise of regulations, be abridged or denied.

*Hague v. CIO,* 307 U.S. 496, 515–516, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939). Accordingly, this Court held, with the *Wolin* Court, that the PATH Terminal is a public forum in which the expression of First Amendment activity, including the distribution of printed material, is constitutionally protected. *Flower v. United States,* 407 U.S. 197, 92 S.Ct. 1842, 32 L.Ed.2d 653 (1972). Compare *Adderley v. Florida,* 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966). As Mr. Justice Roberts noted, however, this determination did not end the inquiry. *Cf. Niemotko v. Maryland,* 340 U.S. 268, 273, 71 S.Ct. 325, 95 L.Ed. 267 (1951) (Frankfurter, J., concurring).

■ This Court approached its task with a keen awareness of the importance of the issues involved. Plaintiff, a declared candidate for public office, sought to communicate on issues of public moment in the midst of a contested election. The means selected to accomplish this political commu-

nication was perhaps the quintessential activity entitled to the protection of the First Amendment; the dissemination of political handbills and leaflets. Such broadsides have played a substantial role in the political definition of this nation throughout its history. See B. Bailyn, *The Ideological Origins of the American Revolution,* 1967. The activities that plaintiff proposed to carry on were pure speech. He did not propose to engage in "conduct as speech" or theater, but simply to disseminate the written word via printed handbills. No more sacred form of political communication exists. As the Supreme Court has stated,

The liberty of the press is not confined to newspapers and periodicals. It necessarily embraces pamphlets and leaflets. These indeed have been historic weapons in the defense of liberty, as the pamphlets of Thomas Paine and others in our own history abundantly attest. The press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion.

*Lovell v. Griffin,* 303 U.S. 444, 452, 58 S.Ct. 666, 669, 82 L.Ed. 949 (1938). *See also Schneider v. State,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); *Talley v. California,* 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1966). Inquiry thus began with a protected activity, occurring in a public forum. To what extent, and under what circumstances may defendants regulate plaintiff in his leafletting?

■ Clearly, the fact that plaintiff was engaged in a protected activity within an area which must be considered a public forum does not foreclose all regulation. He could have been subjected to certain rules which have as their object the public safety. But such regulations, to be valid, would have to be narrowly and specifically drawn. *See Hynes v. Mayor and Council of the City of Oradell,* 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976); *NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *Cox v. Louisiana,* 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); *Saia v. New York,* 334 U.S. 558, 559–560, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948); *Cantwell v. Con-*

*necticut,* 310 U.S. 296, 304–306, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *Lovell v. Griffin, supra,* 303 U.S. at 450–452, 58 S.Ct. 666.

The record before this Court did not indicate that *any* written regulations were promulgated to guide and restrain the exercise of executive discretion in the regulation of leafletting in the Journal Square PATH Terminal. Defendants pointed to no such regulations, and plaintiff's affidavits reflected a somewhat elusive executive response to his attempts to leaflet.

■ Moreover, in support of this response, considerations were advanced that are clearly and uncompromisingly impermissible. The threat of litter cannot intrude upon plaintiff's exercise of his rights. *Schneider v. State, supra,* 308 U.S. at 163, 60 S.Ct. 146. The fear that some persons may feel harassed by being offered plaintiff's literature similarly cannot suffice to support a regulation of his leafletting. Even the possibility of disorders by others so offended by his message that they would fight cannot justify stifling plaintiff. Public inconvenience, annoyance, or even unrest are insufficient to support the exercise of regulatory police power in this area. *See Terminiello v. Chicago,* 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131 (1939). The wholly discretionary, *ad hoc* exercise of regulatory power that is presented on the record of this case was constitutionally intolerable. As the Court of Appeals for the Second Circuit noted in *Wolin* :

The effect of the present regulations is to empower a single official to refuse access on his mere opinion that a denial will prevent inconvenience and disorder. By such devices official authority can become "an instrument of arbitrary suppression of opinion on public questions." *Cox v. New Hampshire,* 312 U.S. 569, 577, 61 S.Ct. 762, 766, 85 L.Ed. 1049 (1941).

*Wolin, supra,* at 93. The complete absence of even the rudimentary administrative guidelines condemned in *Wolin* presented in the instant case a still more clear and present danger of the arbitrary suppression of views.

This Court, however, was cognizant of the fact that there are clearly interests of public safety, rather than convenience, that could support limited regulations of plaintiff's leafletting activities. Because of the emergent nature of the application, made as it was in the heat of a political campaign, and in order to expedite preliminary consideration of the arguments raised by the defendants based upon public safety, this Court itself journeyed to the PATH concourse at a time suggested by the parties and in their company. The Court's own observations, made on the record at the hearing the following day, formed the basis for the entry of a preliminary injunction in favor of plaintiff, granting plaintiff the

right to enter most although not all, areas of the concourse under the terms and conditions set forth in the Order. *Cf. Chicago Area Military Project, supra,* at 926; Tr. 3/17/77, *passim.**

At the time that plaintiff was granted his preliminary injunction, however, the parties raised an additional problem to be considered by the Court. Plaintiff was one of some 43 candidates for the municipal posts at issue in the election. Although the entry of the preliminary injunction in essence disposed of the plaintiff's lawsuit by granting him the relief that he sought, defendants urged upon the Court the difficulties they

---

* The text of the preliminary decree entered by this Court is as follows:

JESSE MOSKOWITZ, ESQ.
Attorney for Plaintiff
880 Bergen Avenue
Jersey City, New Jersey 07306
(201) 963–4200

**FILED**
**MAR 22 1977**
~~8:30~~ 9 A.M.
ANGELO W. LOCASCIO

MARILYN MORHEUSER, ESQ.
American Civil Liberties Union of N.J.
45 Academy Street
Newark, New Jersey 07102
(201) 642–2084

---

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

HOWARD MOSKOWITZ,
    Plaintiff
–vs–
JOSEPH F. CULLMAN,
3rd, et als
    Defendants

Civil Action No. ___77–0492___
PRELIMINARY INJUNCTION

This cause having come on for argument on the motion of the plaintiff for a temporary restraining order and a preliminary injunction and the Court having considered the verified complaint, the affidavit and supplemental affidavit of the plaintiff, the representations and the argument of counsel and the Court having personally inspected the Concourse of the Journal Square Transportation Center in the City of Jersey City and it appearing to the Court, after due deliberation, that plaintiff has, subject to the restrictions hereinbelow set forth, a constitutional right to distribute campaign literature in the Concourse area of the Journal Square Transportation Center and that deprivation of his rights in this regard would constitute an immediate and irreparable injury to the plaintiff and it further appearing that the Port Authority of New York and New Jersey and the Port Authority Trans-Hudson Corporation have promulgated no

regulations governing the exercise of First Amendment rights in the Journal Square Transportation Center and the Court having made its findings of fact and conclusions of law it is, on this 18 day of March 1977,

ORDERED: (1) That defendant, Leslie Shenkler, as Manager of the Journal Square Transportation Center and the remaining defendants, their agents and employees and those acting under their direction and they are hereby restrained and enjoined, pending the determination of this action, from interfering with or inhibiting the distribution, subject to the limitations hereinbelow set forth, of political campaign leaflets by the plaintiff and those acting on his behalf in the Concourse of the Journal Square Transportation Center.

(2) That the number of persons distributing such political campaign leaflets on behalf of plaintiff shall at no time exceed four (4) in number, including plaintiff.

(3) That they at no time make such distribution within five (5) feet of the glass doors providing entry to or exit from the bus platforms.

(4) That such distribution take place only between the hours of 7:30 A.M. and 9:00 A.M. and 4:00 P.M. and 6:00 P.M.

(5) That the plaintiff give 24 hours notice to the defendant Shenkler, or such other person as may be Manager of the Journal Square Transportation Center, of his intention to make such distribution which said notice shall specify the dates and times on and at which the distribution will be made.

(6) That the defendants, within 30 days of the date of this order, submit to the Court a draft of proposed regulations governing use of the facilities of the Journal Square Transportation Center in the exercise of First Amendment rights.

(s)   H. J. Stern
HERBERT J. STERN, JUDGE
UNITED STATES DISTRICT COURT

Approved as to form
(s)   Francis A. Mulhern
FRANCIS A. MULHERN
Attorney for Defendants

might face if all the candidates wished to leaflet at the same time. Accordingly, as did the Court in *Wolin,* this Court directed the defendants to draft regulations governing the use of the PATH Terminal for purposes of First Amendment expression. These regulations have now been submitted to this Court.

Although plaintiff has commented on certain aspects of the Regulations at the invitation of the Court and defendants have responded to those comments, in the view of this Court the promulgation and adoption of the regulations will end this lawsuit. No true case or controversy remains between plaintiff on the one hand and defendants on the other. The regulations satisfy the only remaining issue between the parties to the immediate lawsuit by affording to all, upon a neutral basis, the general benefits of the decree won by plaintiff. Without the adversary focus engendered by a lawsuit, however, it would not be prudent to essay a commentary on the adequacy *vel non* of each term in the proposed regulations. Such a ruling must await a challenge to the regulations, should such a controversy arise, urged by a litigant with a true stake in the outcome. In conformity with this Court's earlier decree, defendants are directed to adopt and promulgate the proposed regulations within sixty (60) days of this Opinion. Summary judgment is entered on behalf of plaintiff.