Martin E. TRENOUTH,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 84–5982.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 3, 1985.

Decided July 2, 1985.

Patrick T. Connor, Law Offices of De-Carlo & Connor, Los Angeles, Cal., for plaintiff-appellant.

Ronald K. Silver, Asst. U.S. Atty., Los Angeles, Cal., for defendant-appellee.

Before HUG and BOOCHEVER, Circuit Judges, and AGUILAR,* District Judge.

HUG, Circuit Judge:

After his arrest and detention by military authorities for violation of 18 U.S.C. § 1382 (1982) (trespassing after already having been removed from a military base), appellant Martin Trenouth initiated this action against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346 (1982), for false arrest. After a bench trial, the district court found the actions of the military authorities justified and ruled for the Government. Trenouth appeals, challenging the constitutionality of his arrest. We affirm.

---

* The Honorable Robert Aguilar, United States District Judge for the Northern District of Cali-

## I

### FACTS

In early March, 1982, Carpenter's Local Union 2375 began picketing a civilian contractor working at the Naval Construction Battalion Center ("Naval Center") in Port Hueneme, California. Appellant, a representative of the Los Angeles County District Council of Carpenters, drove to the picketing site on March 26 to assist the Union. Union picketers were picketing on the side of Pleasant Valley Road opposite from the entrance to the Naval Center. Trenouth says he found this location inadequate for informing workers entering the Naval Center and, even though he had been told by the other picketers that the Naval Center did not permit picketing in the truck parking area, he crossed to the other side of the road and began picketing in the truck parking area. That area is outside a wall surrounding the Naval Center, but is on property constituting part of the Naval Center. A sign posted in the truck parking area near where Trenouth was walking stated: "Trucks stop here and get pass." Also, in the truck parking area was another sign on the wall which stated: "Notice. No auto parking. This area is reserved for trucks making deliveries to the Construction Battalion Center. Autos will be towed away at owner's expense."

A guard informed Trenouth that he was on federal government property and asked him to leave the area. Trenouth refused and the guard notified base security personnel (Department of Defense ("DOD") police), who responded to the call and again informed Trenouth that he was on federal property and that he was required to leave. Trenouth left, but returned and commenced picketing in the truck parking area. DOD police arrested and handcuffed him. They took him to the base security office, interrogated him for an hour or more, issued

fornia, sitting by designation.

him a bar order,[1] and released him. Trenouth then commenced this suit, alleging that he suffered injury as the result of an unlawful arrest. The district court found that Trenouth knew that he was reentering the federal property in violation of the law, and that the DOD police were justified in effecting his arrest. It, therefore, entered judgment for the government.

## II

### ANALYSIS

Trenouth bases this suit, brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346 ("FTCA"), on the ground that DOD officers acted improperly when they arrested and detained him. The FTCA provides that the law of the state where the alleged tort occurs is to be applied to determine whether the defendant committed a tort. 28 U.S.C. § 1346(b). The pertinent tort law applicable in this case has been set out by the California Supreme Court in *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 156 Cal.Rptr. 198, 595 P.2d 975 (1979). The court stated:

> It has long been the law that a cause of action for false imprisonment is stated where it is alleged that there was an arrest without process, followed by imprisonment and damages. Upon proof of those facts the burden is on the defendant to prove justification for the arrest.

24 Cal.3d at 592, 156 Cal.Rptr. at 205, 595 P.2d at 982. The Government concedes that the plaintiff met his burden and that it must justify the arrest. Whether the arrest of Trenouth was justified by probable cause is to be determined by federal law, however. *Cf. United States v. Sears*, 663 F.2d 896 (9th Cir.1981), *cert. denied*, 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148 (1982). The district court's findings of "historical fact" that led it to conclude that the arrest was justified are reviewed under the clearly erroneous standard. *United States v. McConney*, 728 F.2d 1195, 1200 (9th Cir.) (en banc), *cert. denied*, — U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). The district court's ultimate finding that probable cause existed is reviewable *de novo*, however. *United States v. Howard*, 758 F.2d 1318 (9th Cir.1985). Appellant also raises public forum and selective prosecution questions. These issues present mixed questions of law and fact implicating constitutional rights and, therefore, also are reviewable *de novo*. *McConney*, 728 F.2d at 1202–03.

### A. *Probable Cause*

The fact that Trenouth was not prosecuted or convicted on any charges arising from the incident does not indicate that the arrest was unlawful. The Supreme Court has stated that "Under the prevailing view in this country a peace officer who arrests someone with probable cause [and in good faith] is not liable for false arrest simply because the innocence of the suspect is later proved." *Pierson v. Ray*, 386 U.S. 547, 555, 557, 87 S.Ct. 1213, 1218, 1219, 18 L.Ed.2d 288 (1966). The complaint in this case alleged that complainant had been arrested though he "had committed no crime, and there was no reason or cause to believe that plaintiff had committed a crime."

The DOD officers arrested Trenouth for violation of 18 U.S.C. § 1382, which states:

> Whoever, within the jurisdiction of the United States, goes upon any military, naval, or Coast Guard reservation, post, fort, arsenal, yard, station, or installation, for any purpose prohibited by law or lawful regulation; or

> Whoever reenters or is found within any such reservation, post, fort, arsenal, yard, station, or installation, after having been removed therefrom or ordered not to reenter by any officer or person in command or charge thereof—

---

1. A bar order usually is issued to someone after he or she has been expelled once. It warns the person of arrest upon subsequent unauthorized entry. In this case, a bar order was not issued to appellant until after his second trespass and his arrest. The Government never instituted proceedings against appellant under 18 U.S.C. § 1382.

Shall be fined not more than $500 or imprisoned not more than six months, or both.

■ The Naval Center is a "closed installation," which means that it is not freely open to the public. Entry is by permit only. Even though the truck parking area was outside the gates, it was still part of the installation under the supervision of the base security personnel. Trenouth had no more right to maintain an unauthorized presence in this area than inside the gates. *See United States v. Douglass*, 579 F.2d 545, 547 (9th Cir.1978). DOD officers informed him that he was on federal property and expelled him from the installation. He returned and was arrested. The court found that the second entry onto the area of the installation from which he had been removed violated the portion of the statute that prohibits those removed from a federal installation from returning. The district court was correct in concluding that probable cause existed for the arrest.

### B. *Challenges to Justification*

In addition to challenging the legitimacy of the arrest, based on the circumstances and his alleged lack of knowledge of his trespass, Trenouth raises several challenges of constitutional magnitude. He argues that, even if probable cause existed for his arrest, application of the law to him was improper because (1) he was exercising his first amendment rights within a public forum, and (2) he alone was singled out for prosecution although others also were trespassing.

### 1. Public Forum

■ Trenouth contends that the truck parking area in which he was picketing was a public forum. The district court concluded otherwise. In *Flower v. United States*, 407 U.S. 197, 92 S.Ct. 1842, 32 L.Ed.2d 653 (1972) (per curiam), the Supreme Court reversed the conviction of a civilian who had entered a military reservation after having been ordered not to do so. The decision rested on the finding that the area, a

street, was "completely open" and that the military had abandoned any claim of special interest in it. 407 U.S. at 198, 92 S.Ct. at 1843. The Court later held, in *Greer v. Spock*, 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976), however, that government property does not become a public forum whenever members of the public are permitted freely to visit. The Court noted, " 'The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.' " *Spock*, 424 U.S. at 836, 96 S.Ct. at 1217, (quoting *Adderley v. Florida*, 385 U.S. 39, 47, 87 S.Ct. 242, 247, 17 L.Ed.2d 149 (1966) ). In this case, the area was not used by the public as a thoroughfare. It was a parking area reserved for a particular purpose. The district court stated:

> This area cannot be used by the public to go from one non-federal property to another. Its only use and its obvious use is as a part of an access plan to the base. The street itself and the parking area next to it where the arrest took place are dead ends that dead-end at the fence of the base.

The truck parking area was an area reserved for trucks to park while awaiting a permit, before continuing into the installation. The signs clearly indicated the area was reserved for this purpose. The area involved was not a public forum. The Supreme Court stated in *Greer v. Spock:*

> A necessary concomitant of the basic function of a military installation has been "the historicaly unquestioned power of [its] commanding officer summarily to exclude civilians from the area of his command. *Cafeteria Workers v. McElroy*, 367 U.S. 886, 893 [81 S.Ct. 1743, 1747, 6 L.Ed.2d 1230]. The notion that federal military reservations, like municipal streets and parks, have traditionally served as a place for free public assembly and communication of thoughts by private citizens is thus historically and constitutionally false.

## 2. Selective Prosecution

Trenouth also argues that his arrest was arbitrary and discriminatory. The district court found that Trenouth was picketing in the truck parking area, but noted that the plaintiff had not argued discriminatory prosecution, nor had he met the burden of establishing the factors enunciated in *United States v. Douglass*, 579 F.2d 545 (9th Cir.1978), that are necessary to be shown to make out discriminatory prosecution. *Douglass*, which also dealt with a reentry onto a military base, requires that one alleging selective prosecution show that (1) others similarly situated were not prosecuted and (2) the basis for prosecution was impermissible. 579 F.2d at 550. Trenouth was the only person presenting a continuing presence in the area as a picketer. Although there may have been others that rode bicycles in or across the area, there is no indication that they, or anyone else, sought to continue an unauthorized presence in the area after having been requested to leave. We find no showing of selective prosecution.

### III

### CONCLUSION

The area in which Trenouth picketed was not a public forum, and appellant was not entitled to picket there after having been requested to leave. When he thereafter reentered, the security officers acted lawfully in arresting him and there was no evidence of selective prosecution. The judgment of the district court is AFFIRMED.