Nancy HALE, et al.,
Plaintiffs-Appellants,

v.

DEPARTMENT OF ENERGY, et al.,
Defendants-Appellees.

No. 86–1912.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 13, 1986.

Decided Dec. 18, 1986.

Albert G. Marquis, Marquis & Haney, Las Vegas, Nev., for plaintiffs-appellants.

Robert J. Johnston, Asst. U.S. Atty., U.S. Atty.'s Office, Las Vegas, Nev., for defendants-appellees.

Before WRIGHT, SNEED, and KOZINSKI, Circuit Judges.

SNEED, Circuit Judge:

Nancy Hale and others similarly situated (appellants) appeal from the district court's denial of their motion for a preliminary injunction to enjoin the Department of Energy (DOE) from enforcing its regulations dealing with public demonstrations on the Nevada Nuclear Weapons Test Site (NTS). We affirm.

1. The NTS property appears as follows:

## I.

### FACTS AND PROCEEDINGS BELOW

The NTS consists of a tract of land containing approximately 850,764 acres located primarily in Nye County, Nevada. The land was removed from the public domain by various land withdrawals and is reserved as an outdoor laboratory for nuclear weapons testing. The NTS is located approximately sixty-five miles north of Las Vegas, and is adjacent to U.S. Highway 95. The road to Mercury (Mercury Road) is the main road by which access to the NTS from Highway 95 is obtained.

A cattle guard is located very near the Mercury Road exit ramp off Highway 95. Approximately two miles beyond the cattle guard off to the side of Mercury Road is an area that the DOE has designated as a "parking and demonstration area." Another mile beyond the parking and demonstration area is the main guard gate to the NTS. The entire area inside the cattle guard, including the three-mile stretch of Mercury Road from the cattle guard to the main guard gate, is part of the NTS that has been removed from the public domain.[1]

This three-mile roadway is patrolled by security guards from the test site. Members of the public are generally permitted to drive past the cattle guard to the main guard gate, where they must state their reasons, if any, for being within the NTS. If they have no business within the NTS, they are asked to return to the cattle guard and leave NTS property.

The DOE currently limits demonstrations on NTS property to the designated parking and demonstration area, and requires demonstrators to apply for permits. Applications for permits must be submitted thirty days in advance of any demonstration, contain the reasons for the demonstration, and be accompanied by any leaflets or handbills that the demonstrators wish to distribute.[2]

Note 1—Continued

2. The DOE's "Rules Governing the Activities and Conduct of Demonstrators while on the Nevada Test Site" are as follows:

1. A written application for approval to demonstrate on the NTS must be received by the Manager, Nevada Operations Office, not later than 30 days prior to the proposed be-

If a permit is obtained, demonstrators are limited to the parking and demonstration area. Demonstrators without permits are required to remain outside of the cattle guard.

In September, 1985, appellant Nancy Hale applied for a demonstration permit on behalf of the American Peace Test. The application was for the thirty-one day period between October 18, 1985, and November 18, 1985, from sunup to sundown. The DOE approved the permit, but restricted it to the dates of November 4 through November 8, 1985, from 7:00 A.M. to noon. The number of participants was limited to one hundred, and anyone under the age of eighteen was prohibited from participating.[3] The DOE subsequently revoked Hale's permit because of alleged violations.

When demonstrators have crossed the white boundary line of the parking and demonstration area or when they have crossed the cattle guard without a permit, they have been arrested for trespassing.

The appellants sought a preliminary injunction enjoining the DOE from enforcing its regulations pertaining to demonstrations. They assert the right to demonstrate freely along Mercury Road between Highway 95 and the main guard gate, and contend that the regulations of the DOE violate their right of free speech under the First Amendment. Following a nonevidentiary hearing, the district court denied the motion for a preliminary injunction. The court found, *inter alia*, that the three-mile stretch along Mercury Road is not a traditional public forum, and that the appellants

ginning of the demonstration. At a minimum, the application must include:
a. Reason(s) for the demonstration.
b. Sponsor(s) and organization(s) to be represented and how they may be contacted.
c. Inclusive dates and times proposed.
d. Anticipated number of participants.
e. Planned activities
Additional information may be requested for unique events for which special coordination or preparation may be required.
2. Demonstrations may be held only within the area enclosed by the wooden barricades and roads as indicated on the attached map. Attempts to go beyond this boundary may result in arrest and prosecution for trespass.
3. Parking of motor vehicles will be restricted to the area indicated by the attached map. Nevada and Nye County motor vehicle traffic laws apply on the NTS and will be enforced.
4. Demonstrations will take place only during the period from sunup to sundown.
5. No participant may be under the age of eighteen (18) years.
6. Demonstrations may be limited to a specific duration depending on current operational or mission requirements. The manager reserves the right to make this determination on a case by case basis. Normally the duration of the permit is five days.
7. The group representative or sponsor(s) of the organization must provide their own water and sanitation units (such as portable toilets). The sponsor(s) are responsible for the removal of such units, the removal of any refuse associated with the demonstration and to [sic] return the demonstration area to its previous state.

8. Activities must not in any way obstruct normal routines of the NTS, e.g., traffic flow.
9. Handing out of informational leaflets to participants within the confines of the approved demonstration area will be allowed; however, a sample should be forwarded with the application.
10. Medical treatment or other support to demonstration participants will be provided on an emergency basis only and recipients may be billed in order to defray expenses incurred.
11. Under no circumstances will prohibited articles be allowed within the demonstration area or other Federal property associated with the NTS, e.g., firearms, explosives, or incendiary devices.
12. Decisions to arrest and/or prosecute demonstrators for violations of law will be based on applicable Nevada or Federal statutes listed below. Conviction of trespass under Nevada law may result in imprisonment for up to six months and/or a fine of up to $1000. Conviction of violations under cited Federal laws may result in more serious penalties.
N.R.S. 207.200, Trespass on Land
N.R.S. 484.331, Pedestrians on Highways
N.R.S. 484.253, Obedience to Police Officers
N.R.S. 203.200, Assembling to Disturb the Peace or Commit Unlawful Act
Title 18, United States Code
Atomic Energy Act of 1954, as amended
Internal Security Act of 1950, as amended
Other Federal statutes having a relationship to the security of DOE project activities, facilities, or classified information.

3. The age restriction applies to anyone who enters the Nevada Test Site.

failed to establish a likelihood of success on the merits. The appellants timely filed this appeal.

## II.

## DISCUSSION

### A. *Standard of Review*

Hale urges this court to reject the abuse of discretion standard, and to adopt the de novo standard which the Second Circuit has used in reviewing the grant or denial of a preliminary injunction on a paper record containing only affidavits, pleadings and briefs without an evidentiary hearing. *See Norlin Corp. v. Rooney, Pace Inc.*, 744 F.2d 255, 260–61 (2d Cir.1984). The Second Circuit has reasoned that when the district court's decision is based entirely upon papers and not upon live testimony, the appellate court is in as good a position as the court below to make factual findings.[4] *Id.* at 261.

This reasoning has been rejected both by the Supreme Court's reading of former Federal Rule of Civil Procedure 52(a), and by a recent amendment to Rule 52(a). Former Rule 52(a) provided, in part, that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." In *Anderson v. City of Bessemer City*, 470 U.S. 564, 574–75, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985), the Court read the rule literally and found that the "clear error" standard governs even when the district court's findings are based solely on documentary evidence.

*Anderson* led the Seventh Circuit to reject the de novo standard in reviewing a district court's denial of a preliminary injunction based on documentary evidence. *Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429 (7th Cir.1986). The *Lawson* court stated that if the lack of an evidentiary hearing has no effect on an appellate court's review of the underlying factual

determinations, *see Anderson*, 470 U.S. at 574–75, 105 S.Ct. at 1512, it is axiomatic that it has "no impact on the deferential standard of review ... traditionally required in preliminary injunction appeals." 782 F.2d at 1439. Regardless of whether there is an evidentiary hearing or just the papers of the case, the parties must realize that their appearance before the district court is the "main event." *Id.* at 1440.

The identical result is embodied in the 1985 amendment to Federal Rule of Civil Procedure 52(a). Rule 52(a) now provides: "Findings of fact, whether based on oral *or documentary evidence*, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses" (emphasis added). The advisory committee's note makes it clear that the amendment was intended to reject the line of authority holding that, when a trial court's findings are based solely on documentary evidence, appellate review may be de novo. Fed.R.Civ.P. 52(a) advisory committee's note to 1985 amendment (citing *Jack Kahn Music Co. v. Baldwin Piano & Organ Co.*, 604 F.2d 755 (2d Cir.1979), one of the Second Circuit cases applying the de novo standard in reviewing the grant or denial of a preliminary injunction on a paper record).

We hold that review of the district court's denial of appellants' motion must be under the standard of abuse of discretion.

### B. *Standards for Preliminary Injunctive Relief*

To succeed on a motion for a preliminary injunction, the movant must show "either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor." *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1201 (9th Cir.

---

**4.** This court, when previously asked to adopt the de novo standard, found it unnecessary to decide the question under the facts of that particu-

lar case. *See Dollar Rent a Car, Inc. v. Travelers Indem. Co.*, 774 F.2d 1371, 1374 n. 2 (9th Cir. 1985).

1980). These criteria are not entirely separate tests, but rather are "extremes of a single continuum." *Benda v. Grand Lodge of Int'l Ass'n of Machinists*, 584 F.2d 308, 315 (9th Cir.1978), *cert. dismissed*, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979). "The 'irreducible minimum,' however, is that the moving party demonstrate 'a fair chance of success on the merits' or 'questions ... serious enough to require litigation.'" *Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750, 753 (9th Cir.1982) (quoting *Benda*, 584 F.2d at 315).

## C. *Likelihood of Success on the Merits*

### 1. *Forum Analysis*

The fundamental issue this litigation presents is whether the appellants have a First Amendment right to demonstrate freely along Mercury Road between the cattle guard and the main guard gate. The Supreme Court has established that the scope of the government's power to restrict First Amendment activity on public property depends upon the type of forum involved. *See Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 105 S.Ct. 3439, 3448, 87 L.Ed.2d 567 (1985); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44–46, 103 S.Ct. 948, 954–55, 74 L.Ed.2d 794 (1983). In *Perry*, the Court identified three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum. As to a traditional public forum, such as a public street or park, the government (1) may enforce content-based regulations if "necessary to serve a compelling state interest and [if] narrowly drawn to achieve that end," and (2) may enforce content-neutral, time, place, and manner restrictions only where they "are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry*, 460 U.S. at 45, 103 S.Ct. at 954. The same standards govern public property that is not a traditional public forum, but which has been opened by the government as a place for expressive activity. *Id.* at 45–46, 103 S.Ct. at 954–55. Examples of this second category include university meeting facilities, *Widmar v. Vincent*, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981), school board meetings, *City of Madison Joint School Dist. No. 8 v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976), and municipal theaters, *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). Although the government, when it has opened a place for expressive activity, is bound by the same standards that apply in a traditional public forum, it "is not required to indefinitely retain the open character of the facility...." *Perry*, 460 U.S. at 46, 103 S.Ct. at 955.

The nonpublic forum is public property that is not by tradition or designation a forum for public communication. Such property is governed by different standards. Government has the right to preserve the property under its control for its lawfully dedicated purpose. *Perry*, 460 U.S. at 46, 103 S.Ct. at 955; *United States Postal Serv. v. Council Civic Ass'ns*, 453 U.S. 114, 129–30, 101 S.Ct. 2676, 2685, 69 L.Ed.2d 517 (1981); *Greer v. Spock*, 424 U.S. 828, 836, 96 S.Ct. 1211, 1216, 47 L.Ed.2d 505 (1976); *Adderley v. Florida*, 385 U.S. 39, 47, 87 S.Ct. 242, 247, 17 L.Ed.2d 149 (1966). It may enforce regulations of speech as long as they are reasonable and not aimed at suppressing the content of the expressive activity. *Perry*, 460 U.S. at 46, 103 S.Ct. at 955.

The forum in question here is the three-mile stretch of Mercury Road between the cattle guard and the main guard gate. The district court found that the roadway is not a public forum because it is not open to unrestricted public use. Public fora are those "places which by long tradition or by government fiat have been devoted to assembly and debate." *Id.* at 45, 103 S.Ct. at 954. Mercury Road does not fit this definition. The land containing the roadway has been withdrawn from public use for the purpose of conducting nuclear testing. Its

use for expressive, as well as nonexpressive, activity by the public is limited.

Hale contends that the roadway has become a public forum because the government allows the general public unrestricted access to Mercury Road up to the point of the main guard gate. The DOE, as already pointed out, admits that visitors are allowed to approach the main guard gate and state their reasons, if any, for being within the NTS. However, Mercury Road is patrolled by guards and these guards may stop a visitor anywhere along the roadway. Mercury Road between Highway 95 and the main guard gate is not an open thoroughfare despite the fact that visitors are generally allowed to approach the main guard gate without being stopped. To say otherwise is to confuse what is no more than a long driveway with the highway with which it connects.

The Supreme Court has stated that "[t]he government does not create a public forum by inaction or by permitting limited discourse, but only by *intentionally* opening a non-traditional forum for public discourse." *Cornelius*, 105 S.Ct. at 3449 (emphasis added). Allowing the public to drive past the cattle guard to the main guard gate does not transform the roadway into a government-created public forum. There is no *intentional* opening for public discourse in this activity. Nor does the designation of a demonstration area under the circumstances of this case amount to a designation of that area as a "place for expressive activity."

Hale argues that the present case is governed by *Flower v. United States*, 407 U.S. 197, 92 S.Ct. 1842, 32 L.Ed.2d 653 (1972). In *Flower*, the Court held that a public forum was created on a major traffic artery that passed through Fort Sam Houston because the military had abandoned any right to exclude civilian traffic. *Id.* at 198, 92 S.Ct. at 1843. The case is inapplicable. In *Flower*, there was no guard at either entrance or anywhere along the road, and traffic flowed freely twenty-four hours a day. The road was, in essence, a completely open street, *id.*, not a long, frequently patrolled, entrance way to an atomic test site.

*Flower* also must be read in light of its interpretation by the Supreme Court in *Greer v. Spock*, 424 U.S. at 835–38, 96 S.Ct. at 1216–17. The Court in *Greer, id.* at 830–38, 96 S.Ct. at 1213–17, held that freely permitting civilians to visit unrestricted areas of a military base did not convert the base into a public forum. The Court distinguished *Flower* on the ground that the roadway through the military base in *Flower* was a public thoroughfare no different from any other public thoroughfare in San Antonio. *Id.* at 835, 96 S.Ct. at 1216. The *Greer* Court, reversing the Court of Appeals' holding that the base was a government-created public forum, stated:

The Court of Appeals was mistaken, therefore, in thinking that the *Flower* case is to be understood as announcing a new principle of constitutional law, and mistaken specifically in thinking that *Flower* stands for the principle that whenever members of the public are permitted freely to visit a place owned or operated by the Government, then that place becomes a 'public forum' for purposes of the First Amendment. Such a principle of constitutional law has never existed, and does not exist now.

424 U.S. at 836, 96 S.Ct. at 1216.

■ In the present case, the roadway is not, in any sense, a street open to unrestricted public use. Unauthorized persons are not allowed to remain on the roadway, and the government has not abandoned its right to exclude unauthorized traffic, including that of demonstrators. We find that the NTS property along Mercury Road is neither by tradition nor by designation a public forum.

2. *Reasonableness of Restrictions and Neutrality as to Viewpoint*

■ With respect to a nonpublic forum, the government may enforce restrictions on First Amendment conduct as long as they are neutral with respect to viewpoint and are reasonable. *Cornelius*, 105 S.Ct. at 3451. Reasonableness "must be

assessed in the light of the purpose of the forum and all the surrounding circumstances." *Id.* at 3453. The restrictions at issue, precipitated as they were by demonstrator abuses and trespasses, meet this test. The obvious safety and national security concerns associated with nuclear testing facilities reinforce the conclusion that the DOE could reasonably limit the time, place, and manner of demonstrating on NTS property. To limit demonstrations to the designated parking and demonstration area is clearly reasonable.

One factor bearing on the reasonableness of this place restriction is the existence of alternative channels of communication. *Perry*, 460 U.S. at 53–54, 96 S.Ct. at 959. The area outside of the cattle guard adjacent to Highway 95 remains open as a public forum for expressive activity. Hale argues that demonstrating in front of the main guard gate is important in conveying the appellants' message. However, "[t]he First Amendment does not demand unrestricted access to a nonpublic forum merely because use of that forum may be the most efficient means of delivering the speaker's message." *Cornelius*, 105 S.Ct. at 3453. The DOE could have excluded demonstrators from NTS property altogether.[5] We find, therefore, that the place restriction on appellants' access to property inside the cattle guard is reasonable and is thus not constitutionally prohibited.

The appellants also challenge the time and manner restrictions imposed by the permit system as a form of prior restraint. Because the DOE administrator has unbridled discretion in granting a permit and imposing the restrictions upon its use, appellants argue that the system will not be viewpoint neutral in operation. They point out that the DOE requires permit seekers to state their reasons for demonstrating, and to submit in advance any leaflets that they wish to distribute.

It is true that the Supreme Court has in the past invalidated laws that it found

granted too much discretion to public officials to decide who would gain access to traditional First Amendment fora such as public streets and parks. *See, e.g. Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) (invalidating ordinance allowing City Commission to refuse a parade permit if its members believe the public welfare, peace, safety, health, decency, good order, morals or convenience requires that it be refused); *Lovell v. City of Griffin*, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed.2d 949 (1938) (invalidating ordinance forbidding the distribution of literature without the permission of the City Manager). However, it has never applied this kind of analysis to regulations restricting access to government property that was not a public forum. When confronted by an attack on a congressional statute regulating access to postal boxes in *United States Postal Service*, 453 U.S. at 131, 101 S.Ct. at 2686, the Court stated: "[I]t is a giant leap from the traditional 'soapbox' to the letterbox designated as an authorized depository of the United States mails, and we do not believe the First Amendment requires us to make that leap."

We agree that a nuclear test site is not a "soap box." We also readily acknowledge that the DOE regulations are facially neutral. However, we would not concede, and would be reluctant to hold, that the DOE time and manner restraints would encounter no First Amendment obstacles if used in fact to control the content of expression of permittees. *See Cornelius*, 105 S.Ct. at 3454; *Perry*, 460 U.S. at 49, 103 S.Ct. at 957; *Jaffe v. Alexis*, 659 F.2d 1018, 1020 n. 2 (9th Cir.1981). Here there is no claim that the regulations were applied other than in a content-neutral manner. The appellants applied for and received a demonstration permit. There is no allegation that the appellants were treated any differently than any other group seeking a permit. This case, like *Greer v. Spock*, "simply

---

5. The Supreme Court has upheld complete bans on speech at government facilities to preserve the property for the use to which it is dedicated.

*See, e.g., Greer v. Spock,* 424 U.S. at 839, 96 S.Ct. at 1218 (military base); *Adderley v. Florida,* 385 U.S. at 47–48, 87 S.Ct. at 247 (jail).

does not raise any question of unconstitutional application of the regulation to any specific situation." *Greer*, 424 U.S. at 840, 96 S.Ct. at 1218. We decline to hold that to escape being enjoined the DOE must draft a set of regulations that on their face will bar it from all possible First Amendment infringing actions. We are confident the courts of this circuit can deal effectively with any effort by the DOE to control the content of demonstrator speech through its use of the permit system.

### D. *Irreparable Injury and Balance of Hardships*

■ Absent a First Amendment claim, the appellants have failed to establish that irreparable harm will flow from a failure to preliminarily enjoin defendants' actions. Nor does the balance of hardships tip in their favor. The government has adopted reasonable regulations to address the safety and security concerns with the NTS.

The appellants' inability to demonstrate freely on NTS property is not a hardship. As already pointed out, they may demonstrate in a designated area adjacent to Mercury Road in full view of any motorist authorized by the government to traverse the roadway. The First Amendment does not guarantee an optimal setting for speech at all times and places. *See Adderley v. Florida*, 385 U.S. at 47–48, 87 S.Ct. at 247.

### E. *Conclusion*

The district court did not abuse its discretion in denying the appellants' motion for a preliminary injunction.

AFFIRMED.