CITY OF NEW YORK, Appellant, v AMERICAN SCHOOL PUBLICA-
TIONS, INC., et al., Respondents.

First Department, July 31, 1986

14

### APPEARANCES OF COUNSEL

*Paul T. Rephen* of counsel *(Jeffrey D. Friedlander* and *Ellen B. Fishman* with him on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for appellant.

*Howard J. Rubin* of counsel *(Marlene L. Glazer* with him on the brief; *Davis & Gilbert,* attorneys), for respondents.

### OPINION OF THE COURT

MILONAS, J.

Defendant-respondent, American School Publications, Inc., a wholly owned subsidiary of the Learning Annex, Inc., publishes *The Learning Annex Magazine,* which defendants are seeking to distribute free of charge throughout the City of New York by the placement of newsracks on the sidewalks. Plaintiff-appellant the City of New York has allowed other publications, among them *City Business, Investors Daily,* the *Daily News, USA Today,* the *New York Post,* the *New York Times,* and the *Wall Street Journal,* as well as some weeklies, to set up vending machines on the streets of the city. Thus, when defendants decided to disseminate their magazine, they attempted to follow the procedure which they learned had been used by other publications distributed by means of newsracks. Since there is no statute or regulation authorizing the establishment of such newsracks, however, municipal officials simply determine, on the basis of their own assessment of the content of the material in question, which publications are entitled to receive permission. If the city deems a particular publication worthy, it then offers an "Agreement of Principles to Guide Placement of Newspaper Vending Machines on City Streets" (the standard agreement) containing certain guidelines and restrictions concerning the description and installation of the machines, as well as their location, maintenance, repair, removal and liability therefor.

Defendants first contacted the city in October of 1984 when they endeavored to ascertain the applicable procedure for obtaining permission to set up newsracks for their publication. In response thereto, an attorney in plaintiff's office of the Corporation Counsel forwarded a copy of the standard agree-

ment and requested to examine a copy of the publication that defendants intended to distribute. Defendants thereupon sent the city a copy of catalogues for defendant the Learning Annex' school, which provides short, nonaccredited courses. On October 24, 1984, plaintiff's Law Department informed defendants that the course catalogues were mere advertisements and, therefore, could not be disseminated through newsracks or bins. Approximately two weeks later, the president of both the Learning Annex and American School Publications solicited suggestions from plaintiff as to how defendants' publication could be modified so as to overcome the city's objections. The Law Department declined to disclose or describe the city's operating standards and advised defendants to consult their attorney. In the face of the city's refusal to provide any guidance, defendants took it upon themselves to create a publication which they hoped would meet with plaintiff's approval. Consequently, in March of 1985, defendants issued a magazine which, in addition to carrying advertising content for the Learning Annex' school and, to a lesser extent, other commercial enterprises, included various stories, articles and reviews, none of which were related to respondents' courses.

There was no further communication between the parties until May of 1985 when defendants' counsel advised the Corporation Counsel by mail that his client intended to distribute a new magazine through newspaper vending machines which would be made available free of charge. He enclosed a copy of the magazine, along with a signed standard agreement form. During the ensuing nine days, the city rejected defendants' request for a meeting, stating only that the matter was being reviewed. Plaintiff also would not give any indication of how long the reviewing process would take. Defendants, therefore, notified plaintiff, by letter dated May 30, 1985, that they would go ahead and install their own newsracks, which they proceeded to do. According to the city, the machines in question are metal bins about 3 feet high, 19 inches wide and 15 inches deep. They all bear the words "The Learning Annex". Some of these bins were placed at bus stops, near crosswalks or fire hydrants, but defendants claim that these problems have since been corrected.

Plaintiff also contends that by June 4, 1985, when the city had completed its initial survey, defendants had installed at least 220 bins on Manhattan sidewalks, many of which were quickly depleted of their contents. Moreover, the city asserts,

some of these boxes were readily converted into trash receptacles by passersby, and despite defendants' assurance that the machines would be kept stocked and free from debris, accumulated rubbish was observed on several occasions throughout June and July of 1985. In the view of plaintiff, the bins were unsightly, unsanitary and even dangerous. The response of the city was to commence the instant action in June of 1985 seeking an injunction restraining defendants from installing further metal bins and directing that the existing boxes be removed. Defendants opposed the application for injunctive relief and cross-moved for summary judgment. After various replies and further demands for relief were submitted by the parties, the Supreme Court, in a decision dated October 17, 1985, denied plaintiff's motion for a preliminary injunction and granted defendants' cross motion for summary judgment dismissing the complaint. Although the court characterized defendants' addition of further content as "a mere sham to convert a pure advertising leaflet into non-commercial speech" and "mere filler", it found that the lack of regulation and a narrowly drawn statute regarding the time, place and manner of the bins placement was fatal to plaintiff's position.

On appeal, plaintiff argues that the 1st Amendment does not guarantee defendants the right to install their racks on the city's sidewalks and that municipal authorities have the authority and obligation to maintain control over public areas, a proposition which is beyond dispute. Certainly, the city has the duty to keep its public ways in a reasonably safe condition. (*D'Ambrosio v City of New York,* 55 NY2d 454; *Blake v City of Albany,* 48 NY2d 875.) A municipality, moreover, may legitimately exercise its police power to advance esthetic values and avoid the cultural clutter caused by, for example, outdoor billboards and the accumulation of signs posted on public property. (*City Council v Taxpayers for Vincent,* 466 US 789; *Metromedia, Inc. v San Diego,* 453 US 490.) Therefore, it would not have been unreasonable for the city to have concluded that the public interest would be best served by keeping the streets clear of unnecessary disorder and thus prohibiting the establishment of bins on its public sidewalks. This the city did not do, however, since it has given permission to a variety of publications to install vending machines throughout the municipality. The issue here, then, is not the right of the city to bar newsracks or vending machines, which it clearly possesses, but its right to deny to defendants the same privilege which it has granted others.

Plaintiff urges that it is justified in precluding defendants' bins because their magazine is commercial in nature and the articles therein are meaningless filler. In that regard, the United States Supreme Court has recognized that while the 1st Amendment safeguards commercial speech from unwarranted governmental intrusion *(Bolger v Youngs Drug Prods. Corp.,* 463 US 60; *Central Hudson Gas & Elec. v Public Serv. Commn.,* 447 US 557; *Virginia Pharmacy Bd. v Virginia Consumer Council,* 425 US 748; *Bigelow v Virginia,* 421 US 809)*,* commercial speech is less central to the interests of the 1st Amendment than noncommercial speech and is thus subject to a reduced protection. *(Dun & Bradstreet v Greenmoss Bldrs.,* 472 US 749; *Bolger v Youngs Drug Prods. Corp., supra; Central Hudson Gas & Elec. v Public Serv. Commn., supra; Ohralik v Ohio State Bar Assn.,* 436 US 447.) Accordingly, it may be regulated in ways that would be impermissible in the area of noncommercial expression. *(Dun & Bradstreet v Greenmoss Bldrs., supra; Central Hudson Gas & Elec. v Public Serv. Commn., supra; Ohralik v Ohio State Bar Assn., supra.)* For example, "[i]n light of the greater potential for deception or confusion in the context of certain advertising messages, * * * content-based restrictions on commercial speech may be permissible." *(Bolger v Youngs Drug Prods. Corp., supra,* at p 65.)

Plaintiff, in seeking to bar defendants from distributing their publication by means of sidewalk newsracks, contends that it may validly distinguish *The Learning Annex Magazine* from other publications which it has allowed on the streets because the former is commercial speech. The Supreme Court Justice who heard this case agreed with the city's assessment, and, in fact, an examination of a typical copy of the magazine does reveal that it is something less than a scholarly treatise. Yet, the publication contains a collection of articles, stories, and reviews whose quality is at least the equal of that found in numerous other magazines and whose subject matter is entirely unconnected to the Learning Annex' school. At any rate, the nature of the content or its quality is beside the point. As the Court of Appeals declared in *Matter of von Wiegen* (63 NY2d 163, 171, *cert denied sub nom. Committee on Professional Stds. v von Wiegen,* — US —, 105 S Ct 2701): "The State is permitted considerably more latitude in restricting the time, place and manner of speech than it is when it attempts to restrict content. Time, place and manner restriction are valid, if reasonable and rationally related to legiti-

mate State interests. Content or subject matter may be regulated only if substantial State interests are involved and then the regulation may go no further than necessary to serve that interest."

In the city's opinion, the textual material which defendants have put into their magazine is nothing but a pretext for advertising defendants' product. Unlike other publications, the city claims, the articles exist for the sole purpose of disseminating the advertisements instead of the advertisements being utilized as a means to support the informational content. Indeed, under this scenario, plaintiff, in effect, asserts a right to judge the content based upon the motives of the publishers. The United States Supreme Court, however, has held that the mere fact that something is an advertisement does not render it commercial speech, and economic motivation is also insufficient to turn material into commercial speech. *(Bolger v Youngs Drug Prods. Corp., supra; Pittsburgh Press Co. v Human Relations Commn.,* 413 US 376.) In fact, all publishers have an economic motivation to a greater or lesser extent, those of the *New York Times* and the *Washington Post* no less than those of *The Learning Annex Magazine.* Since defendants' purposes in issuing their magazine cannot be the exclusive factor in determining whether or not the publication constitutes commercial or noncommercial speech, it is necessary to refer to the applicable legal authority for guidance.

The United States Supreme Court, having frequently been compelled to grapple with the commercial/noncommercial dichotomy, has defined commercial speech simply as speech which does no more than propose a commercial transaction. *(Bolger v Youngs Drug Prods. Corp.,* 463 US 60, *supra; Virginia Pharmacy Bd. v Virginia Consumer Council,* 425 US 748, *supra; Friedman v Rogers,* 440 US 1; *Ohralik v Ohio State Bar Assn.,* 436 US 447, *supra; Pittsburgh Press Co. v Human Relations Commn., supra.)* Although it is true that advertising linking a product to a matter of vital public interest does not thereby automatically entitle that material to the same degree of constitutional protection afforded noncommercial speech *(Bolger v Youngs Drug Prods. Corp., supra),* if the speech at issue also communicates information, expresses opinion, recites grievances, protests claimed abuses or solicits financial support on behalf of a movement whose existence and objectives are matters of public concern, it is not purely commercial. *(Pittsburgh Press Co. v Human Relations Commn., supra.)* Based upon the Supreme Court's strict standard for

evaluating commercial speech, defendants' magazine falls clearly within the fully protected noncommercial category. In addition to the course listings for defendants' school, as well as advertising for both defendants' product and others, there is considerable informational material on a variety of subjects. Further, none of the articles in the magazine advertises or even mentions defendants' courses.

Aside from the inescapable fact that plaintiff cannot succeed in relegating defendants' publication to the realm of commercial speech, there is another critical problem with the city's effort to remove the magazine's bins from the streets. The Justice at the Supreme Court declined to grant the city's application for a preliminary injunction and dismissed its complaint for an extremely sound reason: the plaintiff's action was taken without the benefit of any statute or regulation, whether narrowly drawn or otherwise. City officials, in the absence of any standards or guidelines, apparently determined that they didn't like defendants' magazine, that it was too inconsequential to merit the same treatment as that accorded other publications, too much a promotional vehicle for defendants' school. Defendants were willing to sign the same agreement and abide by the same rules pertaining to approved publications, but the municipality refused their offer. Indeed, as the situation currently exists, the city asserts absolutely uncontrolled discretion to decide which publications can establish sidewalk newsracks and which cannot, which are noncommercial and which are not. This it simply may not do since the law is utterly clear that in the 1st Amendment area, the authority and discretion of governmental officials must be directed by means of a carefully constructed, narrowly drawn statute or regulation. *(Regan v Time, Inc.,* 468 US 641; *In re Primus,* 436 US 412; *Shuttlesworth v Birmingham,* 394 US 147; *Staub v City of Baxley,* 355 US 313; *Saia v New York,* 334 US 558.)

Government officials may constitutionally impose restrictions that are narrowly framed to serve a significant public interest and which are reasonably related to time, place and manner requirements provided that these restrictions are justified without reference to the content or subject matter of the speech. *(Regan v Time, Inc., supra; Heffron v International Socy. for Krishna Consciousness,* 452 US 640; *Consolidated Edison Co. v Public Serv. Commn.,* 447 US 530.) They are not permitted to act in a completely standardless situation as in the case involved here. Certainly, the lack of any guidelines

whatsoever is an invitation to abusive and arbitrary decision making based on nothing more than the personal opinions or whims of individual public employees. Indeed, even if defendants' magazine were deemed to be commercial, some procedural safeguards would be mandated since commercial speech does enjoy substantial 1st Amendment protection. *(Bolger v Youngs Drug Prods. Corp., supra; Central Hudson Gas & Elec. v Public Serv. Commn., supra; Virginia Pharmacy Bd. v Virginia Consumer Council, supra; Bigelow v Virginia,* 421 US 809, *supra.)* In the absence of an appropriately drawn statute or regulation to administer the placement of vending machines or newsracks, the city must allow all applicants equal access to the sidewalks or none at all. Consequently, the Supreme Court properly denied plaintiff's motion for injunctive relief and was warranted in dismissing the complaint herein.

Therefore, the order of the Supreme Court, New York County (Amos E. Bowman, J.), entered on November 8, 1985, which denied plaintiff's motion for a preliminary injunction and granted defendants' cross motion for summary judgment dismissing the complaint, should be affirmed, without costs and without disbursements.

SULLIVAN, J. P., CARRO, FEIN and ELLERIN, JJ., concur.

Order, Supreme Court, New York County, entered on or about November 8, 1985, unanimously affirmed, without costs and without disbursements.