69 N.Y.2d 576 (1987)
City of New York, Appellant,
v.
American School Publications, Inc., et al., Respondents.
Court of Appeals of the State of New York.
Argued April 30, 1987.
Decided June 2, 1987.
Peter L. Zimroth, Corporation Counsel (Paul T. Rephen, Leonard Koerner, Jeffrey D. Friedlander and Joan R. Schafrann of counsel), for appellant.
Howard J. Rubin, Marlene L. Glazer and Janet B. Linn for respondents.
Arthur N. Eisenberg for New York Civil Liberties Union, amicus curiae.
Chief Judge WACHTLER and Judges SIMONS, KAYE, ALEXANDER, TITONE and HANCOCK, JR., concur.
*579 BELLACOSA, J.
We conclude that it would be a violation of the First Amendment of the United States Constitution to allow the City of New York, in the absence of local ordinance or regulation, to invoke judicial enforcement of its efforts to clear the City's sidewalks of defendants' bins installed for distribution of a free publication called The Learning Annex Magazine, whether the magazine is categorized as commercial or noncommercial speech. The denial of relief by the lower courts to the City should be affirmed.
Defendant The Learning Annex, Inc. offers short nonaccredited courses in the New York City area. Defendant American School Publications, Inc. is a wholly owned subsidiary of The Learning Annex, Inc. and publishes The Learning Annex Magazine, which the defendants distribute free of charge by way of metal bins placed on the sidewalks of New York City.
The City of New York allows other publications, among them City Business, Investor's Daily, The Daily News, The New York Times, USA Today and The Wall Street Journal, to set up similar but coin-operated newspaper vending machines on the sidewalks. The City has no ordinance or regulation governing the placement of any of these bins.
When distribution of a publication by use of street bins was desired, a publisher generally sent a copy of the publication to the office of the Corporation Counsel. A municipal attorney would then determine, based on a personal assessment of the material in question, whether the publication was suitable for distribution through these bins. If the attorney deemed the publication appropriate, the law department would provide an "Agreement of Principles to Guide Placement of Newspaper Vending Machines on City Streets" (the standard agreement) *580 containing guidelines and restrictions on the installation and maintenance of the bins.
In October 1984, the defendants contacted the City to obtain permission to install bins for the dissemination of their publication. In response, an attorney from the Corporation Counsel's office forwarded a copy of the standard agreement and requested a copy of The Learning Annex publication. At that time, the pamphlet simply listed the courses offered by The Learning Annex, Inc. and included information such as course times and fees. Upon review of the pamphlet, the law department informed The Learning Annex that its publication was "mere advertisement" and was not suitable for dissemination through street bins. The defendants sought the City's advice on how to modify the publication to overcome the City's objections. The law department refused assistance.
In May 1985, The Learning Annex again contacted the Corporation Counsel's office  this time with a modified publication designed to gain the City's approval. The Learning Annex Magazine not only listed course offerings, but also included articles and short stories, some of which related to Learning Annex courses and others that did not. The pamphlet also contained some commercial advertisement not related to The Learning Annex. Along with the "magazine", the defendants sent the City an executed copy of the standard agreement form and a letter from the defendants informing the City of their intention to begin installation of bins on the City sidewalks.
In an effort to implement the installation agreement, The Learning Annex tried to meet with representatives of the Corporation Counsel's office. The City declined a meeting, stating that the matter was under review. Having received no response from the City, the defendants began to place bins on the City's sidewalks. The bins are rectangular white metal boxes which stand three feet high with The Learning Annex logo embossed on the front. Unlike other newsboxes located on the City's sidewalks, The Learning Annex bins are not coin operated. According to a street survey conducted by the law department, the defendants had installed approximately 220 bins. Some of the bins were placed at bus stops, others near crosswalks, and some were blocking fire hydrants. Many of the bins were quickly depleted of their contents and some of the empty bins were converted into trash receptacles by passersby.
*581 The City commenced the instant action, contending that the bins are unsightly, unsanitary and even unsafe; seeking injunctive relief restraining The Learning Annex from installing any more bins; and directing that the existing ones be removed. The Learning Annex cross-moved for summary judgment.
Supreme Court viewed the defendants' attempt to modify its publication as "a mere sham to convert a pure advertising leaflet into non-commercial speech", but nonetheless concluded that the City's lack of a narrowly drawn statute or regulation governing the installation of the bins rendered the City's action constitutionally impermissible.
The Appellate Division unanimously affirmed, noting again that the City's action was taken without the benefit of any statute or regulation narrowly drawn or otherwise, and that "[i]n the absence of an appropriately drawn statute * * * the city must allow all applicants equal access to the sidewalks or none at all" (119 AD2d 13, 20). The Appellate Division, however, held the publication was protected as noncommercial speech (id., at 18, 19).
The City argues that the pamphlets distributed by the defendants are commercial speech and that the City's decision to prohibit their dissemination through sidewalk bins fully comports with the constitutional requirements governing the regulation of commercial speech. In short, the City urges that it bans distribution of all commercial speech by way of sidewalk bins and this serves the City's interest in maintaining the appearance and safety of City sidewalks. The City also contends that the bins constitute a common-law trespass and the City may properly insist on removal because defendants have no constitutional or statutory right to install them.
The City's arguments miss its central handicap in this case  a government official or employee may not exercise complete and unregulated discretion, in the absence of duly enacted guidelines or procedures, to decide which publications may be distributed via bins installed on City streets. We agree that the City may regulate the installation of bins on its sidewalks, but it must do so by properly drawn regulations synchronizing the City's right to maintain health and safety with First Amendment speech and press freedoms.
First Amendment guarantees have been extended to the means of distributing a newspaper, as well as to content: The "`[l]iberty of circulating is as essential to [First Amendment] *582 freedom as liberty of publishing; indeed, without the circulation, the publication would be of little value'" (Lovell v City of Griffin, 303 US 444, 452). Moreover, the right of access to public streets and sidewalks, subject to appropriate regulation, is essential to the exercise of First Amendment freedom (Hague v C. I. O., 307 US 496), and the right of access includes the right to distribute printed materials (Flower v United States, 407 US 197).
First Amendment protection, however, does not exempt newspaper or magazine dispensing bins from all governmental regulation. The Constitution does not guarantee the right to communicate views at all times, in all places or in any manner that an individual desires (Heffron v International Socy. for Krishna Consciousness, 452 US 640, 647). Newsbins, like billboards and many other means of communication, involve both communicative and noncommunicative aspects (Metromedia, Inc. v City of San Diego, 453 US 490, 502). While the government may have a legitimate interest in regulating the noncommunicative aspects of the medium, it also is restricted from interfering with the communicative aspects. Government is compelled, therefore, to reconcile its regulatory interest with the First Amendment interest at stake (id., at 502).
The Constitution recognizes a municipality's interest under the police power to ensure the safe and reasonably smooth flow of pedestrian movement on its streets and even the effort at relative cleanliness of its streets. However, First Amendment freedoms are implicated in the recognition of those interests. In order to exert its police power and to restrict access to a public forum, a municipality must adopt reasonable regulations governing the time, place and manner of expression. The regulations must be content neutral, sensitively calibrated to the governmental interest at stake, and must also leave open alternative channels of communication (Heffron v International Socy. for Krishna Consciousness, 452 US 640, supra; see also, Shuttlesworth v City of Birmingham, 394 US 147). They must be publicly promulgated upon being duly enacted.
In this case, the City's action against defendants was taken without the benefit of any regulation. The decision to deny defendants use of bins for distribution was made presumably on the private criteria of a subordinate attorney of the City Law Department. The Corporation Counsel's office offered no *583 guidelines on how to gain governmental approval and on what or whose criteria the government's decision was based. In any event, the Corporation Counsel has no authority to originate such a policy. The City Council is the proper legislative body of the City of New York in this substantive area (NY City Charter § 27 [d]) and the Board of Estimate holds the exclusive implementing authority with respect to the use of City property (NY City Charter § 67 [1]; § 362).
For the City to have acted with such "arbitrary discretion vested in some governmental authority" is "inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view" (Heffron v International Socy. for Krishna Consciousness, 452 US 640, 649, supra). "When a city allows an official to ban [a means of communication] in his uncontrolled discretion, it sanctions a device for suppression of free communication of ideas" (Saia v New York, 334 US 558). The constitutional infirmity inherent in such discretion is intolerable and foreboding in its implications.
Based on this evidentiary record, the City of New York is not entitled to judicial relief against defendants' form of distribution of its publication. On the contrary, the Constitution affords special protections to speech and the press which the City, to the extent permissible, has not properly regulated.
If the City wants to restrict defendants' activities, it will have to enact a proper ordinance or regulation which passes constitutional muster. The City may ultimately choose to distinguish between commercial and noncommercial speech if it does regulate the installation of sidewalk bins, and its choice would not in and of itself offend the "content neutrality" requirement (Matter of von Wiegen, 63 N.Y.2d 163, cert denied sub nom. Committee on Professional Stds. v Von Wiegen, 472 US 1007; Bolger v Youngs Drug Prods. Corp., 463 US 60; Central Hudson Gas & Elec. v Public Serv. Commn., 447 US 557; Ohralik v Ohio State Bar Assn., 436 US 447).
Our holding does not require that we determine whether The Learning Annex Magazine is commercial or noncommercial speech, even though the lower courts have differed in this respect. Whichever it is, the City has utterly failed to provide a constitutional regulatory framework.
*584 Accordingly, the order of the Appellate Division should be affirmed, with costs.
Order affirmed, with costs.